UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| RANCHO VIEJO WASTE MANAGEMENT, LLC, § § § § Plaintiff, § VS. § CIVIL ACTION NO. 5:18-CV-59 § THE CITY OF LAREDO, TEXAS, *et al.*, § § Defendants. § | |

## ORDER

This is a case about political speech and the impact it can have on the marketplace. It is about a company's attempts to secure a permit from a state administrative agency and a community's attempts to have a voice in that process. But above all else, it is about the proper role of the judiciary in our constitutional republic.

The judicial power of the United States "extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing U.S. CONST. art. III, §§ 1–2). An "essential and unchanging part of the case-or-controversy requirement of Article III" is "that a litigant have standing to invoke the authority of a federal court." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (citation omitted). The "[f]irst and foremost" of Article III standing's three elements is that a plaintiff have suffered an injury in fact. *Spokeo*, 136 S. Ct. at 1548 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)).

The state administrative agency is the Texas Commission on Environmental

Quality (TCEQ), which is reviewing a landfill permit application submitted by Rancho Viejo Waste Management, LLC. The Laredo City Council determined that the proposed landfill is not in the best interests of the community and decided to express that opinion to the TCEQ. While the underlying facts are interesting, they don't bestow Article III standing—Rancho Viejo may frown upon the council's comments, but it has failed to allege a cognizable injury in fact. The Court therefore **GRANTS** Defendants' Motion to Dismiss (Dkt. No. 4) under Federal Rule of Civil Procedure 12(b)(1).

I. BACKGROUND

For several years, Rancho Viejo Waste Management has had an application for a Municipal Solid Waste Permit pending with the TCEQ. (Dkt. Nos. 1 at 6; 11 at 2–4; 11-3). Its proposed solid-waste landfill, the Pescadito Environmental Resource Center, would be located roughly twenty miles from the City of Laredo. (Dkt. Nos. 1 at 4; 11 at 1–2). Both Rancho Viejo and the City of Laredo acknowledge that the landfill's proposed site is outside of the municipality's jurisdiction—the city simply lacks regulatory authority over the matter. (Dkt. Nos. 1 at 2; 11 at 4; 14 at 2–3).

With the TCEQ application pending, Bernhard Capital Partners Management, LP reached out to Rancho Viejo to discuss purchasing or investing in the landfill. (Dkt. No. 11-4 at 1–2). Representatives from both entities spoke frequently about the status of the application, and following a February 2016 meeting, they were optimistic that they would eventually strike a deal. (*Id.* at 2).

In May 2016, public concerns about Rancho Viejo's proposed landfill came to

the attention of the Laredo City Council. (Dkt. Nos. 1 at 2, 4–6; 11 at 2; 11-2 at 32–34). The council gave advocates and opponents[1] of the project an opportunity to speak and ultimately took up "a resolution in opposition to the proposed regional landfill that is currently in the permitting process by the Texas Commission on Environmental Quality." (Dkt. No. 11-1 at 13).

The resolution passed—its final form read: "Motion to resolve to oppose a regional landfill and that all public comments made at this Council meeting be forwarded to TCEQ for their consideration during the public comment in the application process." (Dkt. Nos. 11 at 2; 11-2 at 22). In May 2018, Laredo City Councilmen Rudy Gonzalez and Alberto Torres again relayed opposition to Rancho Viejo's application at a TCEQ public meeting. (Dkt. Nos. 1 at 6; 11 at 3). And in August 2018, the city asked the TCEQ for leave to file an amicus brief in opposition to the application. (Dkt. No. 11 at 3–4; 11-5).

After the city council passed its resolution, negotiations between Rancho Viejo and Bernhard Capital broke down. (Dkt. Nos. 1 at 6; 11 at 8–9; 11-4 at 3). When pressed as to whether Bernhard Capital intended to finalize a deal, one of its representatives responded, "No, the City's opposition made it impossible now." (Dkt. Nos. 11 at 8–98; 11-4 at 3).

Rancho Viejo subsequently brought this lawsuit against the City of Laredo and the councilmembers who voted in favor of the resolution, requesting damages,

---

[1] *See infra* Appendix A.

3

declaratory judgment, and injunctive relief under § 1983 and the U.S. Constitution's Commerce Clause, as well as damages for tortious interference with prospective business relations under Texas law. (Dkt. No. 1 at 6–8). Defendants filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) & (6). (Dkt. No. 4). Because the Court must be assured of its power to hear an action before proceeding to its merits, it ordered the parties to address an issue that none had independently raised—standing. (Dkt. No. 10).

## II. LEGAL STANDARD

The judicial power of the United States flows from Article III of the Constitution, which only affords federal courts jurisdiction to adjudicate actual cases or controversies. U.S. CONST. art. III, § 2, cl. 1. "[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Article III standing requires federal courts to make three findings: First, the plaintiff must have suffered an injury in fact, meaning an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical. *Id.* (citations omitted). Second, there must be a "'causal connection between the injury and the conduct complained of' such that the injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Seals v. McBee*, 898 F.3d 587, 591 (5th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560–61). Third,

4

"it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017) (internal quotation marks omitted) (quoting *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010)).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561 (citations omitted). Federal courts are permitted to assess whether those elements have been established on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 n.1 (5th Cir. 2018) (per curiam) (quoting *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009)); *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017) (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

### III. ANALYSIS

The Laredo City Council notably chose to enact only a resolution in opposition to Rancho Viejo's permit application; it did not pass an ordinance, regulation, tax, or any other enactment capable of bringing the city's governmental powers to bear upon Plaintiff's activities. This is important because "[t]he distinction between legislative enactments, such as statutes and ordinances, and resolutions has long been recognized [under Texas law]." *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 397 (Tex. Civ. App.—Hous. [14th Dist.] 1977, writ ref'd n.r.e.) (citations omitted). "[U]nlike an ordinance, a resolution is not a law, but an expression of an opinion."

5

*City of Carrollton v. Tex. Comm'n on Envtl. Quality*, 170 S.W.3d 204, 215 (Tex. App.—Austin 2005, no pet.); *see also* 52 Tex. Jur. 3d *Municipal Corporations* § 192 (2019) ("A resolution does not constitute a law, but is a mere expression of the opinion or will of the governing body concerning some matter of administration coming within its official cognizance." (citations omitted)).

The significance of this distinction is displayed in the Sixth Circuit's recent decision in *Miller v. City of Wickliffe*, 852 F.3d 497 (6th Cir. 2017). Dan Miller, a plaintiff in that case, had sought to open a nightclub in the City of Wickliffe but faced pushback in two ways: First, the city passed a resolution supporting religious organizations' opposition to his application for a state liquor license. *Id.* at 500. Second, the city enacted an ordinance requiring nightclubs to secure a municipal permit. *Id.* Miller brought suit against the city raising eight claims:

> (1) a request for declaratory relief under 42 U.S.C. § 1983 due to Ordinance 2009-49's alleged vagueness, overbreadth, and illegal retroactivity; (2) injunctive relief under § 1983 premised on the same; (3–5) three separate violations of 42 U.S.C. § 2000A for intentional racial discrimination, selective enforcement, and disparate impact; (6) a violation of 42 U.S.C. § 1983 based on equal-protection violations; (7) tortious interference with a contract; and (8) tortious interference with a business relationship.

*Id.* at 501. After noting that Miller never applied for the required permit, the Sixth Circuit concluded that the ordinance had not given rise to an actual or imminent injury and dismissed the case for lack of standing. *Id.* at 502–07; *id.* at 507 ("All plaintiffs here can say is that, *had* they done this or that, the City *might* have taken some action against them."). If the circuit thought it debatable whether the city's

6

expressive resolution—as opposed to its regulatory ordinance—gave rise to an injury sufficient to satisfy Article III standing, it did not waste ink addressing the issue.

When the Laredo City Council passed the resolution at issue here, it was simply an expression of the council's opinion and a directive to have that opinion (along with other public comments from the council's meeting) forwarded to the TCEQ. (Dkt. Nos. 11 at 2; 11-2 at 20–22). The resolution was not, nor did it purport to be, enforceable as law.[2] Still, Rancho Viejo argues that it has suffered an injury fairly traceable to the resolution and redressable by a favorable decision in this case. For the reasons set forth below, the Court disagrees.

## A. Injury in Fact

The first element of Article III standing requires a plaintiff to have suffered an injury in fact—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In its filings, Rancho Viejo explicitly identifies "lost business opportunities" as its injury in fact, (Dkt. No. 11 at 8–9), but also alludes to the notion of reputational harm (Dkt. Nos. 11 at 10; 12 at 3). The Court will address

---

[2] *Cf. Little v. City of N. Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (citation omitted) (finding that a resolution that accused the appellant of "unprofessional, unethical, and criminal conduct," was "'not a legislative pronouncement with the force of law' . . . because it '[did] not prescribe a punishment, penalty or forfeiture.'" (quoting *Little v. City of N. Miami*, 624 F. Supp. 768, 771 (S.D. Fla. 1985), *aff'd in part, rev'd in part*, 805 F.2d 962 (1986))); *see also Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, No. 08–cv–603, 2010 WL 3448097, at *5 (S.D. Ohio July 7, 2010) (concluding that a plaintiff's claim was both hypothetical and speculative, in part because the city council's resolution was an expression of opinion and not enforceable as law).

each theory in turn.[3]

**1. Lost Opportunity Injury**

Rancho Viejo argues that Bernhard Capital's decision to end negotiations is "precisely the type of concrete, actual damage contemplated by the injury-in-fact element for standing." (Dkt. No. 11 at 9). To support that proposition, Rancho Viejo cites what it describes as "a well-established line of cases holding that loss of a non-illusory opportunity to pursue a benefit constitutes injury in fact." (*Id.* at 8–9). But not one of those cases deals with a private entity's decision to voluntarily terminate negotiations.

In the first case, *New Jersey Television Corp. v. FCC*, a plaintiff challenged the Federal Communication Commission's dismissal of an application to build a low-power television broadcast station. 393 F.3d 219, 221 (D.C. Cir. 2004). In the second, *Teton Historic Aviation Foundation v. U.S. Department of Defense*, a plaintiff challenged the U.S. Department of Defense's limitations on surplus government aircraft-parts sales. 785 F.3d 719, 721–25 (D.C. Cir. 2015). The third, fourth, and fifth cases challenged, respectively, the Village of Arlington Heights' refusal to rezone

---

[3] Rancho Viejo has not asserted threat of imminent future injury, but its bears noting that such an argument would be without merit. It is true that federal courts have:

> permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent. Specifically, [the Supreme Court has] held that a plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). But as has been explained, the City of Laredo has promulgated no rule or regulation that Plaintiff faces a credible threat of being prosecuted under or having enforced against it.

a tract of land, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263–64 (1977), the University of California's reservation of certain medical-school class spots for minority students, *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 280–81 n.14 (1978), and the City of Jacksonville's reservation of certain city contracts for minority-owned businesses, *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666, 668–69 (1993). In the final case, *Three Expo Events, L.L.C. v. City of Dallas*, a plaintiff challenged the City of Dallas's refusal to lease its convention center to a company known for "adult love- and sex-themed conventions." 907 F.3d 333, 336–38, 340–42 (5th Cir. 2018). The common thread through each of those cases is that they involve a plaintiff who was denied an opportunity to pursue some benefit from government.

In contrast, Rancho Viejo has identified no benefit that the City of Laredo has denied it; to the contrary, all parties admit that the City of Laredo has no power to either allow or disallow Rancho Viejo's proposed landfill. The city has merely expressed its preferred outcome in a permit application pending before the TCEQ. Rancho Viejo has not "lost the opportunity" to pursue its landfill-permit application or market its proposed landfill to investors.

It may be that—despite the authorities it cites—Rancho Viejo actually means to argue that the injury it suffered was Bernhard Capital's decision to withdraw from negotiations. But that argument is likewise unavailing. Because Bernhard Capital never actually entered into an agreement with Rancho Viejo, the latter's claimed losses are no more than conjecture—not the kind of loss that courts have found

9

sufficient to establish an injury in fact. *See Berry v. Jefferson Par.*, 326 F. App'x 748, 750–51 (5th Cir. 2009) (holding that owners of rezoned property failed to establish injury in fact where the lost sale they complained of was only speculative); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 985 (11th Cir. 2005) ("We simply cannot conclude that the loss of a hypothetical and uncertain *prospect* of earning a sum of money amounts to an 'actual' or 'imminent' injury.").

By way of example, in *Bochese v. Town of Ponce Inlet*, a private developer opted not to exercise an option to purchase an oceanfront lot, citing the Town of Ponce Inlet's rezoning of the land as the but-for cause of its decision. 405 F.3d at 968–72. The lot's owner brought suit against the town, arguing that he lost out on $950,000 as a result of the developer's decision to walk away from the purchase. *Id.* at 977–79. Affirming a district court's dismissal of the suit on multiple grounds, including lack of Article III standing, the Eleventh Circuit noted that "[t]he discretion reserved to [the developer] under its purchase agreement with [the plaintiff] was simply so broad as to render [the developer's] eventual purchase of the [plaintiff's] lot no more than a wholly uncertain possibility." *Id.* at 985. The circuit therefore concluded that the plaintiff's "alleged 'loss' of $950,000 . . . does not rise to the level of certainty required to establish an injury in fact." *Id.*

As was the case in *Bochese*, Rancho Viejo's negotiations with Bernhard Capital never resulted in any actual agreement to purchase the proposed landfill. The loss Rancho Viejo alleges is thus only conjecture. It is insufficient to establish an injury in fact under Article III.

10

## 2. Reputational Injury

The only other theory of injury alluded to in Rancho Viejo's filings is reputational injury. (Dkt. No. 12 at 3). Rancho Viejo never explicitly argues that it can satisfy the first element of Article III standing on that basis, but two of its filings do touch upon the notion. In the redressability section of its initial standing memorandum, Plaintiff states that a favorable decision in this case will relieve it "of the current smear of its reputation." (Dkt. No. 11 at 10). And in its supplemental standing memorandum, which addresses *Three Expo Events, L.L.C. v. City of Dallas*, 907 F.3d 333 (5th Cir. 2018), Plaintiff asserts that "the Fifth Circuit held that the [City of Dallas's] resolution would cause Three Expo 'future reputational injury likely redressable by injunctive or declaratory relief, an[d] "[t]he Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing."'" (Dkt. No. 12 at 3 (quoting *Three Expo Events*, 907 F.3d at 342)). Thus, although Rancho Viejo has not expressly argued that the City of Laredo's resolution gave rise to the kind of reputational injury that would satisfy the injury-in-fact element of Article III standing, the Court will evaluate that contention.

As an initial matter, it is unclear whether the *Three Expo* panel actually did hold that the City of Dallas's resolution gave rise to a reputational injury sufficient to satisfy the injury element of standing. As noted above, the plaintiff in that case, Three Expo Events, LLC, was a "company engaged in the business of producing and presenting adult love- and sex-themed conventions." *Three Expo Events*, 907 F.3d at 336. After the City of Dallas's Convention Center hosted one such event—and began

11

negotiations for another—the Dallas City Council passed a resolution that "direct[ed] the City Manager to not enter into a contract with Three Expo Events, LLC, for the lease of the Dallas Convention Center." *Id.* at 337–38. Three Expo brought suit against the City of Dallas, but a district court dismissed the case for lack of Article III standing. *Id.* at 338.

The Fifth Circuit reversed, but each member of the three-judge panel wrote for themselves. Judge Dennis, whose opinion Rancho Viejo cites for the case's holding, concluded that Three Expo had suffered an injury in fact because of its "loss of revenues from the convention . . . [and because] the City's actions will cause Three Expo future reputational injury." *Id.* at 342. He added, "[t]he Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing," but did not otherwise elaborate on the contours of that doctrine. *Id.* (alteration in original) (quoting *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 161 (2d Cir. 2003)). Judge Jolly's concurrence in the judgment joined Judge Dennis's opinion only to the extent that it "holds that Three Expo has sustained a direct injury . . . sufficient to establish standing." *Id.* at 342 (Jolly, J., concurring in the judgment). Judge Elrod dissented, concluding that Three Expo had waived any argument of reputational-injury standing because it had not adequately raised the issue. *Id.* at 346 (Elrod, J., dissenting). This split complicates the task of extracting a definitive rule from the case.

Leading authorities, however, counsel that "[w]ith a plurality decision, the only opinion to be accorded precedential value is that which decides the case on the

12

narrowest grounds." BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT 195 (2016). That principle accords with the *Marks* rule, which mandates that "[w]hen a fragmented [Supreme] Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as the position taken by those Members who concurred in the judgment on the narrowest grounds." *United States v. Duron-Caldera*, 737 F.3d 988, 994 n.4 (5th Cir. 2013) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)).

Applying that rule to *Three Expo*, the narrowest ground for deciding the case was not reputational-injury standing. Yes, Judge Dennis's opinion found that the City of Dallas's resolution caused Three Expo both (1) "direct pecuniary injury," and (2) "future reputational injury." *Three Expo*, 907 F.3d at 342. But Judge Jolly concurred in the judgment only "to the extent that the opinion holds that Three Expo has sustained a *direct* injury." *Id.* (Jolly, J., concurring) (emphasis added). Thus, the precedent established by *Three Expo* is that a business has standing to sue when it is denied equal access to a government-provided opportunity, and the denial causes direct pecuniary injury.

But even if Judge Dennis's *Three Expo* opinion wholly commanded a majority of the panel, there are weighty reasons to believe that the reputational-injury rule would not provide for standing in the case at hand. First, *Three Expo* and the reputational-injury cases cited by Judge Dennis all dealt with governments that singled out specific individuals or entities for public opprobrium. *See Three Expo*, 907 F.3d at 338 ("[T]he City Council directs the City Manager to not enter into a contract

13

with Three Expo Events, LLC, for the lease of the Dallas Convention Center."); *Gully*, 341 F.3d at 162 ("Gully's reputation will be blackened by the Board's finding of misconduct and unfitness."); *Walker v. City of Mesquite*, 129 F.3d 831, 832 (5th Cir. 1997) ("In the case at bar Peebles was reprimanded sternly and found guilty of blatant misconduct."). The City of Laredo, however, never impugned the conduct or motives of Rancho Viejo; it simply took a position on the desirability of a new regional landfill and communicated its position to the state agency where the landfill's application is currently under consideration.

Second, as the Ninth Circuit has noted in a separate context, "[c]ities, counties, and states have a long tradition of issuing pronouncements, proclamations, and statements of principle on a wide range of matters of public interest." *Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1414 (9th Cir. 1996). Some city council resolutions are "clearly expressive in nature[ and] constitute[] a declaration of principle, rather than an exercise of governmental powers." *Id.* And local governments do occasionally take legal and policy positions on matters pending before judicial or administrative tribunals. *See, e.g.*, Brief of Chicago, Los Angeles, New York, Philadelphia, and Other Cities and Counties, Joined by the U.S. Conference of Mayors as Amici Curiae Supporting Respondents, Trump v. Hawaii, 138 S. Ct. 2392 (2018) (No. 17–965), 2018 WL 1605655.

To hold that Rancho Viejo suffered a reputational injury because the City of Laredo expressed its position on a permit application pending state-agency review would set an ominous precedent. Whenever a city, county, or state wished to have its

14

point of view taken into consideration by another governmental entity—such as by filing an amicus brief with a court or forwarding public comments to an administrative agency—parties opposed to such expression could simply claim future reputational injury and spawn peripheral proceedings in federal courts. Rancho Viejo points to no authority suggesting that is the state of the law. Nor has it articulated a sufficient basis to find reputational-injury standing in this case. It has therefore failed to establish that the Laredo City Council's resolution caused it to suffer an injury in fact.

### B. Causation and Redressability

In the absence of an injury established by Plaintiff, the Court cannot measure the issues of causation and redressability. In any event, resolution of those questions is now unnecessary.

### IV. CONCLUSION

Plaintiff has not carried its burden of establishing Article III standing because it has not shown that it suffered a concrete and particularized, and actual or imminent injury. The Court is therefore without power to hear this action. Defendants' Motion to Dismiss (Dkt. No. 4) is hereby **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**.

It is so **ORDERED**.

SIGNED March 11, 2019.

_____
Marina Garcia Marmolejo
United States District Judge